**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**KEVIN JOSEPH GABRIEL BRENNAN,**

**Plaintiff,**

**3:09-CV-677**

**-against-**

**COUNTY OF BROOME IN THE STATE OF NEW YORK,**

**Defendant.**

---

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

## I. INTRODUCTION

Plaintiff commenced this action *pro se* asserting that Defendant deprived him of his right to constitutional due process in connection with a child neglect or abuse investigation, and violated his rights under the Americans with Disabilities Act by failing to provide adequate handicap parking near the Broome County Family and County Court building in Binghamton, New York. See Am. Compl., dkt. # 15. Presently before the Court are: (1) Plaintiff's appeal of Magistrate Judge David E. Peebles's January 11, 2011 Order, dkt. # 38; (2) Defendant's motion for summary judgment, dkt. # 39; (3) Plaintiff's cross-motion for a finding of contempt of court against two non-party Broome County employees, dkt. # 41; and (4) Plaintiff's application for the appointment of counsel, dkt. # 48. The Court will

address the motions *seriatim*.

## II. APPEAL OF MAGISTRATE JUDGE DECISION

On January 11, 2011, after reviewing the parties' papers and hearing oral argument, Magistrate Judge Peebles denied Plaintiff's discovery motions and Plaintiff's request for the designation of a private attorney general in this matter. See Jan. 11, 2011 Order, dkt. # 36. Plaintiff appeals this decision, essentially re-arguing the merits of his motions before Magistrate Judge Peebles. See dkt. # 38. Defendant has filed opposition, arguing that Plaintiff's positions are without merit. See dkt. # 40.

A district court judge reviewing a magistrate judge's non-dispositive pretrial order, as is in issue here, see Labarge v. Chase Manhattan Bank, N.A., 1997 WL 583122, at * 1 (N.D.N.Y. Sept. 3, 1997)(Pooler, D.J.)("Pretrial disputes concerning discovery generally are non-dispositive matters because they do not resolve parties' substantive claims for relief as set forth in the pleadings.")(citation omitted), may not modify or set aside any part of that order unless it is clearly erroneous or contrary to law. Id. (citing 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); N.D.N.Y. LOCAL RULE 72.1(b)); Mathias v. Jacobs, 167 F. Supp.2d 606, 621-23 (S.D.N.Y. 2001). Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. Lanzo v. City of New York, 1999 WL 1007346, *2-3 (E.D.N.Y. Sept. 21, 1999). This standard imposes a heavy burden on the objecting party, and only permits reversal where the district court determines that the magistrate judge "abused his broad discretion over resolution of discovery matters." Labarge, 1997 WL 583122, at *1; see Mathias, 167 F. Supp.2d at 621-23; Lanzo, 1999 WL 1007346, *3.

The Court finds no error or abuse of discretion by Magistrate Judge Peebles in issuing the January 11, 2011 Order. Plaintiff's mere supposition that Broome County computers might hold information different from that which was produced in discovery despite sworn representations to the contrary, or that the room in which he was interviewed by Broome County officials was equipped with audio and video surveillance equipment despite sworn representations to the contrary, is insufficient to demonstrate error or abuse of discretion by Magistrate Judge Peebles. There was also no abuse of discretion in failing to require Defendant to produce (1) documents which are created or maintained by a different entity over which Defendant has no control, or (2) documents that Plaintiff already possesses. As to the case worker's handwritten notes, Defendant supplied an affidavit from the case worker asserting that the handwritten notes were shredded once the information from the notes was entered into the state-maintained Connections system,[1] as was the case worker's practice to do; that Plaintiff has been provided a complete copy of the computer generated notes; and that the last entry into the system (with the concomitant shredding of handwritten notes) occurred three months before the commencement of this action. It was not error or abuse of discretion for Magistrate Judge Peebles to deny Plaintiff's motion to compel this discovery "without prejudice to plaintiff's right to request from the trial court the issuance of a spoliation jury instruction" relative to these handwritten notes. See Jan. 11, 2011 Order.[2]

---

[1]The Connections System is a state wide database used for documenting abuse and neglect investigations resulting from reports made to the New York State Office of Family and Children's Services' Child Abuse and Neglect Hotline.

[2]Magistrate Judge Peebles wrote: "Plaintiff's motion to compel the defendant to produce further discovery materials is DENIED, without prejudice to plaintiff's right to request from the trial court the issuance

(continued...)

The Court also finds no error or abuse of discretion in Magistrate Judge Peebles's denial of Plaintiff's motion for the appointment of a private attorney general in this matter. Plaintiff's newly minted argument that he should be afforded "private attorney general status" because he seeks to protect the rights of disabled government employees or "similarly situated" individuals who access the Broome County Family and County Court Building is without merit because Plaintiff has not instituted a representational-capacity suit.

For these reasons, Magistrate Judge Peebles January 11, 2011 Order is **affirmed.**

## III. SUMMARY JUDGMENT MOTION

The Court next turns to Defendant's motion for summary judgment.

### a. Standard Of Review

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the

---

[2](...continued)
of a spoliation jury instruction with respect to handwritten notes of caseworker, Kathleen Bednar. This denial is based upon the defendant's assertion that all documents within its possession, custody or control concerning an investigation of the plaintiff by the Broome County Department of Social Services have been produced, other than three specified letters which cannot be retrieved, and the court's finding that plaintiff has copies of those letters and that he has not provided the court with any evidence that would undermine the credibility of defendant's sworn assertions in this regard."

record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon “mere allegations or denials” asserted in his pleadings. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994); Fed. R. Civ. P. 56(e).

The Local Rules of the Northern District provide a procedure for the efficient resolution of summary judgment motions. See N.D.N.Y.L.R. 7.1(a)(3). This places the onus on the parties to present the evidence that either supports or defeats the motion. A movant must set forth the undisputed facts that, it contends, entitles it to summary judgment in a Statement Of Material Facts. See N.D.N.Y.L.R. 7.1(a)(3). “Each fact listed shall set forth a specific citation to the record where the fact is established.” Id.

Once a properly supported Local Rule 7.1(a)(3) Statement of Material Facts is submitted, the non-moving party must “file a response to the [movant’s] Statement of Material Facts.” Id. This requires a statement that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Id. “Each denial shall set forth a specific citation to the record

where the factual issue arises." Id. Conclusory denials unsupported by specific citations to the record are insufficient. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005).[3] The Court deems as admitted properly facts in a movant's Statement of Material Facts that the opposing party has not specifically or properly controverted. N.D.N.Y.L.R. 7.1(a)(3).

While the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, Govan, 289 F. Supp.2d at 295;[4] Veloz v. New York, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004), the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3). Govan, 289 F. Supp.2d at 295; see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."); McNeil v. United States, 113 S. Ct. 1980, 1984 (1993))("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

Simply stated, on a motion for summary judgment it is the duty of the parties, not

[3](upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations.")

[4] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Govan, 289 F. Supp.2d at 295.

the Court, to sift through the record and bring to the Court's attention the pertinent information that may create or defeat a triable issue of fact. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000). Summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking. FED. R. CIV. P. 56(c); Celotex Corp., 477 U.S. at 322.

**b. Background**[5]

Plaintiff brings causes of action sounding in the denial of constitutional due process related to a Department of Social Services child abuse or neglect investigation, and sounding in a violation of the Americans With Disabilities Act related to the availability of handicap parking near the Broome County Family and County Court Building in Binghamton, New York. The Court will address the factual background pertinent to these claims separately.

**1. Department of Social Services Investigation**

In December 2008, Rachel Anesi, the mother of Plaintiff's then-15 year old son filed a visitation modification petition in Broome County Family Court. The petition alleged that the son feared Plaintiff because of the verbal abuse directed at the child, and that Petitioner's conduct was causing deleterious effects on the child's well-being, including gastrointestinal distress. See April 8, 2010 Modified Decision and Order by Hon. John F.

[5] Unless indicated otherwise, the following facts are taken primarily from Defendants' Statement of Material Facts [dkt. # 39-11] containing facts that are either admitted by Plaintiff or which are not properly controverted. See Resp. 7.1(a)(3) Stat. [dkt. # 43].

Lambert, Broome County Family Court Judge, dkt. # 44-2.[6] On December 18, 2008 Family Court Judge Spiro Pines ordered the Broome County Department of Social Services to conduct an investigation pursuant to Family Court Act § 1034 to determine whether Plaintiff had abused or neglected the child. The Broome County Department of Social Services ("DSS") received the Order on January 6, 2009. Also on January 6, 2009, the Child Protective Services ("CPS") Unit of the Broome County DSS received notice of an abuse or neglect complaint filed against Plaintiff with the New York State Office of Family and Children's Services' Child Abuse and Neglect Hotline ("Hotline"). The investigation into the Hotline allegation and the FCA § 1034 Order was assigned to Barbara Barry, a supervisor in the Broome County CPS Unit. The investigation was also assigned to Kathleen Bednar, one of the case workers under Ms. Barry's supervision.

From January 6, 2009 through March 6, 2009, Ms. Bednar conducted an investigation that included: two home visits to Ms. Anesi's house; several discussions with the 15 year old son; an interview with Ms. Anesi and her husband; an interview and home visit with Plaintiff; a call to the son's school to check on his attendance, grades and whether the school had any concerns about the child; and an interview with the mother of Plaintiff's daughter.

The son advised Ms. Bednar, *inter alia*, that: Plaintiff would regularly scream at him using vulgarity; Plaintiff appeared to be smoking illegal drugs while the son was visiting;[7]

---

[6]The petition by Ms. Anesi, who was granted legal and physical custody of the son on June 23, 2000, was in the midst of fifteen Family Court petitions filed by Plaintiff. See 4/8/10 Mod. Dec. Ord. of Judge Lambert.

[7]The son stated that he has observed Mr. Brennan on occasion blowing into a bowl and metallic pipe and then blowing the smoke into a pillow Mr. Brennan had on his face. The son stated that Mr. Brennan's

(continued...)

Plaintiff would punch the walls, cabinets, and car windows when he was screaming and that his mood was getting worse; on two occasions Plaintiff took the son with him when Plaintiff appeared to enter a building to purchase illegal drugs; and when the son was at Plaintiff's residence for visitation he spent most of his time in his room.

Ms. Anesi advised Ms. Bednar that Plaintiff had been known to use illegal drugs in the past and that, in her opinion, the son was negatively affected by Plaintiff's screaming. Ms. Anesi also advised Ms. Bednar that Plaintiff had previously been court-ordered to attend anger management therapy. Am. Compl. ¶ 22.

Plaintiff told Ms. Bednar that: the son always "cries wolf;" he does not yell at the son until the fourth or firth time he has to tell the son to do something; he smoke cigars but not when the children are in the house; and he had no prior Child Protective Services history. Plaintiff's apartment appeared clean to Ms. Bednar. Plaintiff's daughter was also present at the time of the visit. The daughter appeared to Ms. Bednar to be clean and adequately cared for. On two occasion (February 17, 2009 & March 5, 2009), after Plaintiff consented to submit to drug screening tests, Plaintiff failed to appear for the tests.

A social worker at the son's school advised Ms. Bednar that the son's attendance and grades were excellent and he had no disciplinary issues. Ms. Bednar was advised that the school had no concerns about the son.[8] The mother of Plaintiff's daughter told

---

[7](...continued)
house always had a "bland/funky" weird smell to it. The son also observed a muddy looking, "black tar" substance in Mr. Brennan's ash tray which did not appear to be cigarette ashes.

[8]On March 16, 2009, Ms. Bednar spoke with a social worker who was seeing Plaintiff's son. She advised Ms. Bednar that when the son was having visitation with Mr. Brennan he appeared to regress socially and emotionally. It is not clear in the record whether this discussion occurred after the FCA §1034 report was prepared and presented to the Family Court, and whether it occurred after DSS personnel submitted the
(continued...)

Ms. Bednar that she did not have any concerns with the daughter visiting Plaintiff and that she had not heard about problems between Plaintiff and his son.

On March 6, 2009, Ms. Bednar determined that the case should be "indicated" for inadequate guardianship and drug/alcohol use.[9] Ms. Bednar had the "Connections" computer system generate "Notice of Indication" letters and forwarded the file to her supervisor Barbara Barry for review. On March 16, 2009, Ms. Bednar met with Ms. Barry. They discussed the case and the Family Court Act § 1034 report was prepared and submitted to the Family Court. It was also determined that the case would be "indicated" against Plaintiff for inadequate guardianship and drug/alcohol use, and the Notice of Indication was sent to Plaintiff.

On April 13, 2009, Plaintiff filed a request with the New York State Office of Family and Children's Services for an expungement hearing on the indicated report. The initial appearance on the expungement hearing, which was held before an Administrative Law Judge ("ALJ") employed by the New York State Office of Family and Children's Services, was held on September 29, 2009. Another hearing was held on December 30, 2009 at which Plaintiff testified. Prior to the start of the December 30, 2009 hearing, Ms. Anesi's Family Court attorney appeared and requested from the ALJ permissions to sit in

---

[8](...continued)
"indicated" report of child abuse or maltreatment against Plaintiff to New York's Central Register (see text, *infra*).

[9]See N.Y. Soc. Servs. Law § 412 ("An 'indicated report' means a report made pursuant to this title if an investigation determines that some credible evidence of the alleged abuse or maltreatment exists."); Kenific v. Oswego County, 2010 WL 2977267, at * 11 (N.D.N.Y. July 23, 2010) ("Such credible evidence may consist, in part or whole, of hearsay.") (citing cases).

on the hearing, which was denied based upon Plaintiff's objection. A further hearing date was scheduled for May 4, 2010 and was adjourned. The hearing was rescheduled for August 4, 2010 and was adjourned at Mr. Brennan's request. The hearing was rescheduled for March 1, 2011.

On June 26, 2009, the Broome County Family Court held a hearing on the various petitions involving Plaintiff including Ms. Anesi's petition to modify Plaintiff's visitation with his son. Plaintiff did not attend the hearing. Broome County Family Court Judge John F. Lambert determined to proceed in Plaintiff's absence. After hearing evidence, Judge Lambert made findings that Plaintiff hurled curses and invectives at his son amounting to verbal abuse that struck fear in the child, and that Plaintiff's actions were detrimental to the health and well being of the son. See April 8, 2010 Modified Decision and Order of Judge John F. Lambert, Family Court Judge (attached as Plt. Ex. 2, dkt. # 44-2). Plaintiff's visitation with his son was suspended and made contingent upon further application to the Court. Id. Plaintiff asserts in his memorandum of law that he has not visited with his son in two years.

**2. Americans With Disabilities Claim**

According to the allegations in the Amended Complaint, Plaintiff suffers from certain physical impairments caused by a 1995 work-related injury that requires Plaintiff to utilize crutches when he walks.

The Broome County Family and County Court Building was designed in 1997 and was constructed on Hawley Street in the City of Binghamton next to the George Harvey

Justice Building and across the street from the Governmental Plaza.[10] The building was opened to the public in August 1999. The property is bordered by Collier Street on the west and Exchange Street on the east. Behind the Family and County Court building is the Broome County Courthouse. Hawley Street, Collier Street and Exchange Street are streets under the jurisdiction of the City of Binghamton and Broome County does not set parking regulations for these streets. There is no on-site public parking for the Family and County Court Building.

The City of Binghamton provides on-street metered public parking on Exchange Street next to the Family and County Court Building. There is a metered handicapped parking spot on Exchange Street in front of the former Broome County Library. The City of Binghamton provides metered parking with a designated metered handicapped parking spot on Isabella Street which abuts the Broome County Office Building and runs perpendicular to Hawley Street across from the Family and County Court Building. The City provides metered handicapped parking spaces on Hawley Street in front of Binghamton City Hall. The City provides public parking in a parking garage on Collier Street which is across the street from the George Harvey Justice Building. There are handicapped parking spaces in this garage. The garage is approximately three hundred yards to the entrance of the Family and County Court Building.

Plaintiff contends that while there are handicap parking spots (a) across the street from the Broome County Family and County Court Building, Am. Compl. ¶ 55, (b) public paid parking on Isabella Street on the side of the Broome County Family and County Court

[10]The Governmental Plaza consists of the Broome County Office Building, the State Office Building and Binghamton City Hall.

Building, Am. Compl. ¶ 51, and (c) two handicap parking spaces in front of the George Harvey Justice Building next door to the Broome County Family and County Court Building (these spots being purportedly installed based upon Plaintiff's request, Am. Compl. ¶¶ 52, 67), "one more [spot] is authorized [in front of the George Harvey Justice Building] and there is still no spot in front of the Family Court Building." Am. Compl. ¶ 68 (First Cause of Action). Although Plaintiff has been able to attend Broome County Family Court proceedings, see Am. Compl. ¶¶ 28, 55, and was aware of the existing handicap parking spots at the time of his Family Court proceedings, see Am. Compl. ¶¶ 60-67, he asserts that he "refused to attend" his Family Court proceeding on November 13, 2009 "due to the fact that there is no handicapped parking in front of the Family Court Building." Am. Compl. ¶ 62.

**c. Discussion**

Plaintiff asserts both substantive and procedural due process claims related to the Department of Social Services's investigation.

**1. Substantive Due Process**

It is well-settled that the Due Process clause guarantees "the interest of a parent in the custody of his or her children as 'a fundamental, constitutionally protected liberty interest.'" Kia P. v. McIntyre, 235 F.3d 749, 758 (2d Cir. 2000)(quoting Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir.1996)). Here, however, Defendant did not interrupt Plaintiff's protected liberty interest in the custody of his child. Rather, any interruption of Plaintiff's custody rights to his son was effectuated by the independent determination of Family Court Judge Lambert based on Ms. Anesi's visitation modification petition instituted

before DSS became involved.[11] Thus, Plaintiff has no substantive due process deprivation claim against Defendant based on the liberty interest in the custody of his son. See Daniels v. Murphy, 2007 WL 1965303, at * 4 (E.D.N.Y. July 2, 2007).[12] Moreover, Plaintiff fails to make sufficient allegations of a municipal "policy" for imposition of § 1983 liability on Defendant. See Tenenbaum v. Williams, 193 F.3d 581, 597 (2d Cir. 1999)(citing Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); see also Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir.1991)(In order to establish municipal liability, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

Even assuming, *arguendo*, that a fact finder could conclude that Defendant facilitated the deprivation of Plaintiff's liberty interest, perhaps by the failure to properly train or supervise its case workers, the facts fail to support a viable substantive dues process claim. As Judge Suddaby wrote,

> It has long been settled in this Circuit that "a parent's interest in the custody of a child [is] a constitutionally protected liberty interest subject to due process protection." Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999) (internal quotation marks and citation omitted ). "To prevail on a claim that this right has been violated, plaintiffs must demonstrate that the government action was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Sutton v. Tompkins County, 617 F. Supp.2d 84, 93

---

[11]The facts indicate that DSS became involved after Family Court Judge Pines ordered a FCA Section 1034 investigation based on Ms. Anesi's allegations, and after a Hotline report was generated to the CPS Unit.

[12]("However, plaintiff's complaint fails to allege that the CPS defendants interrupted plaintiff's parental custody, and thereby implicated plaintiff's due process rights. Indeed, at oral argument, plaintiff asserted that she has never lost custody of her son Thomas, and, thus, that the instant complaint is unrelated to any custody proceedings that have occurred in state court. Therefore, because plaintiff has failed to allege any conduct by the CPS defendants that threatened plaintiff's interest in the custody of her child, the complaint fails to state a claim under Section 1983 for violation of plaintiff's substantive due process rights.").

(N.D.N.Y. 2007) (Mordue, C.J.) (internal quotation marks and citation omitted).

* * *

"This Circuit has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context." Id. "An investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." Id. (citation omitted). "In applying a reasonableness standard in the abuse context, courts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between 'difficult alternatives' often need to be made on the basis of limited or conflicting information." Id. at 105 (citation omitted). "[A] mere failure to meet local or professional standards, without more, should not generally be elevated to the status of constitutional violation." Id. at 106 [citation omitted]. "As a result, even a faulty investigation does not necessarily rise to the level of an unconstitutional investigation." Id.

This conscious-shocking requirement constitutes one of the elements necessary to state a claim for a violation of the Fourteenth Amendment under 42 U.S.C. § 1983. Among the other elements (which include the fact that the defendants were acting under the color of state law and the fact that defendants' conduct caused an injury to the plaintiff) is the requirement that, when they acted, defendants possessed a state of mind more blameworthy than carelessness or negligence. Specifically, Defendants must have possessed a state of mind that rose to the level of intent or deliberate indifference-a state of mind akin to criminal recklessness.

Kenific v. Oswego County, 2010 WL 2977267, at * 13 (N.D.N.Y. July 23, 2010).

Nothing the DSS case workers did in this case arose to the conscious-shocking level and, as evidenced by the independent finding of Family Court Judge Lambert, the case workers' conclusions that there was some credible evidence to believe that Plaintiff engaged in maltreatment of his son was amply supported by the evidence existing at the time. Thus, the case worker's conclusions were reasonable under the circumstances, and Plaintiff's complaints of inadequacies in the investigation fail to bring the claim into the conscious-shocking realm. Similarly, the fact that Ms. Anesi's Family Court attorney showed up at the expungement hearing asking, unsuccessfully, to sit in, even if told of the

proceeding by the DSS attorney, does not arise to the level of conscious-shocking conduct such to make out a substantive due process violation.[13]

Plaintiff's speculation that DSS case workers conspired with Ms. Anesi to deprive Plaintiff of his custodial rights to his child is not only unsupported by the evidence, but contrary to the undisputed facts that DSS became involved after Family Court Judge Pines ordered DSS to investigate Plaintiff's conduct and after a Hotline report was generated regarding Plaintiff's conduct. Accordingly, the facts demonstrate that Defendant acted in accordance with its public function and obligation relative to the underlying matter. Moreover, the underlying facts, as demonstrated by Family Court Judge Lambert's findings, supported the case workers' conclusions regarding Plaintiff's conduct. No reasonable fact finder could conclude that the case workers acted with the intent to improperly deprive Plaintiff of his constitutional right to custody or son, or acted with deliberate indifference to that right. Accordingly, Plaintiff's substantive due process claims are **dismissed**.

**2. Procedural Due Process**

Plaintiff also fails to present a viable procedural due process claim against Defendant based upon his liberty right to the custody of his son. Again, the claim fails because Defendant did not remove the child from Plaintiff's custody. Daniels, 2007 WL 1965303, at * 4 ("Similarly, because plaintiff does not allege that a state actor 'remove[d] a child from a parent's custody,' the complaint fails to present circumstances that would trigger plaintiff's entitlement to the 'procedures [that] must be afforded to a parent when

---

[13]Defendant asserts that Ms. Anesi's Family Court attorney attended the expungement hearing at Ms. Anesi's request because Plaintiff subpoenaed Ms. Anesi to testify at the hearing.

the coercive power of the State seeks to separate them' from their children.")(quoting Kia P., 235 F. 3d at 759). Also like the substantive due process claim, Plaintiff fails to make sufficient allegations of a municipal "policy" causing the alleged procedural due process violations. See Tenenbaum, 193 F.3d at 597.

Even assuming, *arguendo*, that a fact finder could conclude that Defendant played some role in depriving Plaintiff of his constitutional right to custody, the procedural due process claim fails because Plaintiff was afforded adequate due process by the Family Court proceeding. See Tenenbaum, 193 F.3d at 593 ("As a general rule ..., before parents may be deprived of the care, custody or management of their children without their consent, due process-ordinarily a court proceeding resulting in an order permitting removal-must be accorded to them."); Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987) (due process "would generally require a predeprivation hearing"). The record indicates that Plaintiff's custody rights to his son, in the form of a visitation modification order suspending his visitation, was effectuated after a hearing on then-pending Family Court petitions including Ms. Anesi's petition to modify Plaintiff's visitation rights. That Plaintiff elected not to attend the hearing does not change the fact that the pre-deprivation hearing was available to him. Further, there is no indication in the record that Plaintiff sought a rehearing of the Family Court matter because of his absence, or that he appealed the Family Court's determination to the Appellate Division the New York State Supreme Court.

To the extent that Plaintiff asserts that his liberty interest in his good name and reputation was impaired by the "indicated" report of maltreatment, and assuming without deciding that Plaintiff satisfies the "stigma-plus" requirement of such a claim, see Paul v.

Davis, 424 U.S. 693, 711-12, 96 S. Ct. 1155, 47 L. Ed.2d 405 (1976);[14] Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir.1994),[15] the claim fails because Plaintiff was afforded a name-clearing expungement hearing before the New York State Office of Family and Children's Services ALJ. This hearing allowed Plaintiff to challenge the basis of the case worker's determination to "indicate" the report against Plaintiff from the Hotline. To the extent that Plaintiff asserts that his liberty interest in his good name and reputation was violated by the content to the FCA § 1034 report provided to the Family Court, Plaintiff was afforded a name clearing hearing in the Family Court wherein Plaintiff could challenge the results of the FCA § 1034 investigation.

Plaintiff has failed to establish that he has a constitutional protected property or liberty interest in any of the state regulations or procedures which, he contends, he was deprived. See Young v. County of Fulton, 160 F.3d 899, 902 (2d Cir. 1998)("Without more, the fact that defendants violated New York procedural requirements does not support liability under § 1983."). For these reasons, Plaintiff's procedural due process claims are **dismissed**.

### 3. Americans with Disabilities Act

Plaintiff also alleges that Defendant violated the Americans with Disabilities Act because it did not provide adequate handicapped parking at the Broome County Family and County Court Building. See Am. Compl. ¶ 68. It is undisputed, however, that

---

[14](Damage to a person's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause." Rather, loss of reputation must be coupled with some other tangible element in order to rise to the level of a protectible liberty interest.)

[15](The Second Circuit has interpreted Paul v. Davis's holding to mean that "stigma plus" is required to establish such a constitutional deprivation).

Defendant does not provide public on-site parking at the Broome County Family and County Court Building; that the City of Binghamton controls the parking on the streets adjacent to the Broome County Family and County Court Building; and that there were handicapped parking spaces on the streets and in the parking garage in close proximity to the Broome County Family and County Court Building that Plaintiff was aware of and which he utilized to attend some Family Court proceedings. Plaintiff's claim that the handicapped spots were inadequate because they were not "in front of the Family Court Building," Am. Compl. ¶ 68, fails to state a viable claim under Title II of the Americans with Disabilities Act. See 42 U.S.C. § 12132.[16]

To make out a *prima facie* case under Title II, Plaintiff must allege facts sufficient to establish that (1) he is a 'qualified individual' with a disability; (2) that Defendant is subject to the ADA; and (3) that Plaintiff was denied the opportunity to participate in or benefit from Defendant's services, programs, or activities, or was otherwise discriminated against by Defendant, by reason of Plaintiff's disability. Henrietta D. v. Bloomberg, 331 F. 3d 261, 272 (2d Cir. 2003). Assuming, *arguendo*, that Plaintiff satisfies the first element, he fails to satisfy the third element inasmuch as he was able to attend Broome County Family Court proceedings at the Broome County Family and County Court Building by parking in available handicap parking spots located in close proximity to the building. Moreover, according to Plaintiff's allegations, Broome County officials acted upon Plaintiff's request for additional and closer handicap parking spots near the Broome County Family and

[16](Title II of the ADA prohibits discrimination in public services and specifically provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.")

County Court Building by requesting of City of Binghamton officials to instal additional handicap parking spots. This purportedly resulted in two spots being installed next door to the Broome County Family and County Court Building and which prompted Plaintiff to contact Broome County officials to thank them for their efforts. See Am. Compl. 67. In light of the fact that Defendant did not have authority over the streets surrounding the Broome County Family and County Court Building, these efforts constituted a reasonable accommodation under the circumstances and no reasonable fact finder could conclude otherwise. See Meekins v. City of New York, 524 F. Supp.2d 402, 407 (S.D.N.Y. 2007) (In determining what constitutes "reasonable accommodations," the Court looks to federal regulations implementing both Title II); 28 C.F.R. Pt. 35, App. A. ( "[A] public entity should provide an adequate number of accessible parking spaces in existing parking lots or garages over which it has jurisdiction.")(emphasis added); Ehrlich v. Gatta, 2009 WL 3213715, *3 (S.D.N.Y. Oct. 05, 2009)("More significantly, nothing in Ehrlich's Complaint demonstrates that nine handicapped spaces is not "reasonable accommodation" and therefore sufficient under the ADA.") see also Henrietta D ., 331 F.3d at 271 (To establish a reasonable accommodation claim under the ADA, "the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled."). Accordingly, Plaintiff's Americans with Disabilities Act claim is **dismissed**.

## IV. CROSS-MOTION FOR FINDING OF CONTEMPT

Plaintiff has filed a Notice of Motion seeking, in additional to denial of Defendant's

summary judgment motion, a finding of contempt of court against Kathleen Bednar and Defendant's attorney, Robert Behnke, Esq. See dkt. # 41. Other than this mention of contempt in the Notice of Motion, Plaintiff does not address this issue in his affidavit or memorandum of law. Inasmuch as Plaintiff has provided no factual or legal basis for his cross-motion, the motion for a finding of contempt of court is **denied**.

## V. APPLICATION FOR APPOINTMENT OF COUNSEL

Plaintiff's application for the appointment of counsel to aid in the drafting of a second complaint is **denied** for the reasons stated in Magistrate Judge Peebles's April 16, 2010 Decision and Order denying the appointment of counsel, dkt. # 14, and because Plaintiff has failed to timely moved to amend his complaint for a second time. See Uniform Pretrial Scheduling Order, ¶ 5, dkt. # 12 ("Any application to amend any pleading in this action shall be made on or before APRIL 30, 2010.")(emphasis in original).

## VI. CONCLUSION

For the reasons discussed above,

(1) Plaintiff's appeal of Magistrate Judge David E. Peebles's January 11, 2011 Order, dkt. # 38, is **DENIED** and Magistrate Judge Peebles's January 11, 2011 Order is **AFFIRMED**;

(2) Defendant's motion for summary judgment, dkt. # 39, is **GRANTED** and all claims in Plaintiff's Amended Complaint are **DISMISSED**;

(3) Plaintiff's cross-motion for a finding of contempt of court against Ms. Bednar and Attorney Behnke, dkt. # 41, is **DENIED**;

and

(4) Plaintiff's application for the appointment of counsel, dkt. # 48, is **DENIED**.

The Clerk of the Court is directed to close the file in this matter.

**IT IS SO ORDERED**

DATED:June 1, 2011

Thomas J. McAvoy
Senior, U.S. District Judge